HARTFORD ACCIDENT & INDEMNITY CO. *v.* HEWES *et al.*

(In Banc.   Dec. 9, 1940.   Suggestion of Error Sustained Jan. 20, 1941.)

[199 So. 93.   No. 34313.]

(In Banc.   Jan. 20, 1941.)

[199 So. 772.   No. 34313.]

Butler & Snow, of Jackson, for appellant.

**Lotterhos & Travis** and **Vardaman S. Dunn,** all of Jackson, for appellee.

Argued orally by **George Butler, Jr.,** for appellant, and by **Fred J. Lotterhos** and **Vardaman S. Dunn,** for appellee.

**McGehee, J.,** delivered the opinion of the court.

The question here is whether the appellant, as surety on a subcontractor's bond which guaranteed the faithful performance of the subcontract for the doing of certain highway construction work and all undertakings, covenants, terms, conditions and agreements of the subcontract, of which the carrying of public and employers' liability insurance for the protection of the public and the employees of the subcontractor was one, became liable to the insurance agencies, issuing such liability insurance policies to the subcontractor, for the unpaid premiums due thereon.

Demurrers were overruled to the declaration seeking such a recovery, and the subcontractor and surety thereupon declining to plead further a final judgment was rendered against them in favor of appellees for the amount of the premiums in the sum of $2,380.75, with interest and cost. From that judgment, the surety, Hartford Accident & Indemnity Company, alone prosecutes this appeal.

The original contract was awarded by the United States of America to the partnerships of Pigford Brothers and Shuptrine Construction Company, jointly, for the performance of certain work on Project 3-W-1, Natchez Trace Parkway, in Adams and Jefferson Counties, Mississippi, which required, in addition to the faithful performance of the work, that the contractors should carry public and employers' liability insurance throughout construction and until the completion of the work contracted for. Thereafter, a portion of the work was subcontracted to the Heidkamp-Isen Landscape Company, Inc., whereby the said subcontractor agreed and obligated itself "to carry liability insurance for the protection of its employees in the same manner, for the same time, and for the same amounts required by the United States of America of the contractor herein in the contract hereinabove referred to and made a part hereof." The subcontract also contained the further provision that the subcontractor would "well and truly perform all the undertakings, covenants, terms, conditions and agreements of said contract during the original term of said contract," as awarded to the original contractors.

Procuring the liability insurance was a condition precedent to the right to commence the work under either the original or the subcontract, and maintaining the same in force was essential to its completion. It is true, therefore, as contended by appellees, that the act of the subcontractor in obtaining the insurance required by its contract served to enable it to commence and complete the work contracted for; and that hence the surety was

benefited by this compliance on the part of its principal with the requirement of the subcontract, the performance of which it had guaranteed.

But the controlling principle of law here involved is that one not a party to a contract can sue for a breach thereof only when the condition which is alleged to have been broken was placed in the contract for his direct benefit. A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or the promisee. Williston on Contracts, Vol. 2, Sec. 402, page 1157; Restatement of Contracts, Sec. 147; 6 R. C. L., Sec. 274, page 886; American Jurisprudence, Vol. 12, Secs. 281 and 282; 17 C. J. S., Contracts, Sec. 519, subsection c, page 1127, and numerous cases cited by these three texts last above mentioned, which hold that a third person cannot maintain an action upon a contract merely because he would receive a benefit from its performance or because he is injured by a breach thereof. That in order to do so, the provision sought to be invoked must have been inserted in the contract directly or primarily for his benefit; or to state the same rule differently, one not a party to a contract and who would be only indirectly and incidentally benefited by its performance cannot recover for a breach thereof.

For example, if the original contractors had found it necessary to obtain and pay for the insurance or incur liability therefor, upon a default of the subcontractor to carry the same for the benefit of its employees, in order to enable the subcontractor to commence and complete the work on time and also discharge the obligation of the original contractors to the United States of America of carrying such insurance for the benefit of the employees engaged on the construction project, then the right of the original contractors to be reimbursed for the expense incurred for the payment of the insurance premiums would clearly exist against the subcontractor and its surety. Likewise, under the rule of law hereinbefore stated, the employees of the subcontractor would

be entitled to relief in a proper case against the surety as well as against the subcontractor for any failure to carry the liability insurance for the protection of such employees as required by the subcontract and bond; the requirement in question being clearly intended for the protection of the original contractors, as obligees in the subcontractor's bond, and also for the direct benefit of the employees of the subcontractor.

The principle that a third party may recover directly on a contract made expressly for his benefit is recognized in Mississippi in the following cases: Canada v. Y. & M. V. R. R., 101 Miss. 274, 57 So. 913; Moore v. Kirkland, 112 Miss. 55, 72 So. 855; Yazoo & M. V. R. R. v. Sideboard, 161 Miss. 4, 133 So. 669, 671. The rule was declared as strongly in favor of such a person as the views of the text-writers and the logical deductions from the best-reasoned cases in other jurisdictions would justify when this court in the case of Yazoo & M. V. R. R. v. Sideboard, supra, announced that a third person not a party to the contract may recover thereon under the following conditions: "(1) When the terms of the contract are expressly broad enough to include the third party either by name [or] as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract."

Applying the conditions above announced, can it be said in the case at bar that the terms of the subcontractor's bond, requiring that it "carry" liability insurance, are broad enough to show (1) a purpose to bestow a benefit upon the insurer; (2) that the protection of the insurer was within the intent or contemplation of the contracting parties; or (3) that the original contractors as obligees in the performance bond had a substantial and articulate interest in the welfare of the insurer in the subject matter of the subcontract? On the contrary, does

it not clearly appear that the requirements of the contract and bond of the subcontractor to "carry" liability insurance for the protection of the public and for the benefit of the employees of the subcontractor, were intended primarily as a guaranty of the faithful performance of the obligations of the original contractors to the United States of America (1) that the work sublet would be done according to contract, and (2) that the public and the employees of the subcontractor would be protected by liability insurance during the progress and until the completion of the work contracted for?'

There was no alleged breach of the subcontractor's performance bond in so far as its obligation to the obligees to perform the work subcontracted and the obligation to "carry" the liability insurance for the protection of the public and for the benefit of the subcontractor's employees are concerned, unless the word "carry" liability insurance should be construed to mean that the surety as well as the subcontractor was obligated to the insurance agencies from whom the insurance was procured by the subcontractor to bear the expense thereof, as well as to maintain or keep the same in force. What appears from the briefs of counsel to have been an extensive search by them of the authorities has revealed no reported case similar to this one except the recent case of Anderson v. United States F. & G. Co., 1940, 44 N. M. 483, 104 P. (2d) 906, 907, 129 A. L. R. 1084, wherein there was an effort to recover of one Joseph Gagner and the appellee, as principal and surety, respectively, on a bond executed by them guaranteeing faithful performance by Gagner of his contract with the Board of Education of the City of Alberquerque for the construction of a public school building, whereby Gagner, as the contractor, was required to "maintain" liability insurance, and where the amount sought to be recovered was the unpaid insurance premiums for such liability insurance. The appellant, who was plaintiff in the lower court, contended that the word "maintain" liability insurance meant that the con-

tractor would bear the expense thereof, and that consequently execution of the faithful performance bond obligated the surety as well as the contractor to pay all insurance premiums for the liability insurance required under the contract. The court held that while the word "maintain" had been held to mean "bear the expense of; to support; to keep up;" that it had also been held, and in the opinion of that court with better reason, that the word "maintain" meant to keep in force; and cited with approval the case of Kansas City Structural Steel Corp. v. Utilities Building Corp., 339 Mo. 68, 95 S. W. (2d) 1176, 106 A. L. R. 224; and held that under the definition of the word "maintain" as found in Webster's International Dictionary, the court was unable to say that it means "to pay for."

Numerous decisions are cited in the briefs which disclose much confusion and conflict in regard to whether or not the obligation of a contractor to "furnish" labor and materials in connection with the work contracted for would bind a surety on the performance bond to pay for the same upon default of the contractor so to do, many of the cases holding that such an obligation on the part of the surety does not exist unless the contract, the performance of which is guaranteed, obligates the contractor to "furnish and pay for" the labor and materials, while many others hold that the obligation of the contractor to "furnish" the labor and materials implies an obligation to pay for the same, and that consequently the surety would be thus obligated upon default of the contractor in that behalf. We deem it unnecessary to cite and discuss in this opinion these conflicting decisions in that regard. Suffice it to say, it appears that this conflict of opinion in the reported cases has resulted in the enactment of statutes in many states, including our own, to the effect that any bond for the faithful performance of a public contract shall include a guarantee that the contractor shall make payment to materialmen and laborers, and that if such a provision is omitted, the bond shall

inure to the protection of the materialmen and laborers as if the provision were expressed. Our statute, Chap. 128, Laws of 1918, Secs. 2274-2281, Code of 1930, was upheld by the Supreme Court of the United States in the case of Hartford Accident & Indemnity Company v. Nelson Mfg. Company, 291 U. S. 352-361, 54 S. Ct. 392, 78 L. Ed. 840. In this connection, it may be pertinent to observe that no statute has been called to our attention requiring such a bond to contain a provision for the payment of insurance premiums where the contractor is required to carry liability insurance, nor does it appear that any court has read into such a bond this obligation on the part of a surety upon default of the contractor to pay such premiums. In other words, this protection in favor of the insurance companies, providing such liability insurance, seems not to have been covered by any appropriate legislation.

In support of their contention that the word "carry" when used in connection with an obligation to protect the public and employees with liability insurance should be given a broader meaning than that given the word "furnish" by some of the courts in regard to labor and materials, the appellees call attention to the fact that a contractor may have materials on hand, or may manufacture them, and may perform the labor required to fulfil his contract; and that, therefore, an agreement to "furnish" does not necessarily imply an obligation "to pay for," guaranteed by the surety. From this premise, they then argue, and not without good reason, that a covenant in a contract whereby a contractor undertakes to "carry" insurance is notice to the surety on the performance bond that the principal must purchase the insurance and pay for it, or at least incur the liability to do so, as an essential prerequisite to doing the work contracted for. In this connection, appellees cite the case of Massachusetts Bonding & Insurance Co. v. United States for the use of Clarksdale Machinery Company, 5 Cir., 1937, 88 F. (2d) 388, 390, wherein there was involved a

bond which guaranteed the faithful performance of levee work near the Mississippi River, and where the contract, the performance of which was guaranteed by the bond, obligated the contractor to pay the labor and material claims of persons supplying labor and materials in the prosecution of the work. The appellee in that case furnished the contractor certain repair parts for a fleet of trucks used on the construction work, and also leased to him a number of trucks. The suit was to recover the price of the repair parts and the agreed rental on the trucks. The court held that these items were included within the term "material" as used in the bond, and in the course of its opinion said: "The surety knew that this was the character and method of the work to be done. His primary obligation under his bond was to the United States that the job be accomplished and on time. Contractor's expenditures in carrying on the work which were reasonably necessary to accomplish this were thus for the relief of the surety, . . ." It must be conceded that this is strong language tending to support the contention of the appellees in the case at bar, but it is to be noted that the contract which the surety guaranteed should be performed by its principal in that case contained an express covenant that the principal would pay the claims for labor and materials. Moreover, the provision in that behalf was placed in the contract for the direct benefit of those furnishing labor and materials. Therefore, the decision is in harmony with the rule announced by all of the texts hereinbefore first cited, and with the uniform holding of the courts in that regard. We would have no difficulty in applying the foregoing decision so as to sustain the view of the appellees if we were able to hold that the liability insurance supplied by them constituted "materials" and the recovery was being sought on the "payment" bond, which required the subcontractor in the case at bar to pay for the necessary labor and materials; but such is not the case. The proper construction of the "performance" bond which obligated the subcontractor

to "carry" liability insurance does not rest upon the distinction between the word "furnish," meaning to provide or supply, and the word "carry," which has been defined to mean to bear the expense of, and also to keep in force, but rather the legal test by which the liability of the appellant surety is to be measured is whether or not the requirement of carrying the liability insurance was intended primarily for the direct benefit only of the public and the employees of the subcontractor, and in relation to which the insurance agencies were merely incidental beneficiaries.

It is true that the rule of strictissimi juris which operates in favor of gratuitous sureties is inapplicable in a suit against a compensated surety. This merely means, however, that a compensated surety is not entitled to a strict or technical construction of the contract, but that on the contrary the obligation is to be considered in the same light as any other contract, and that the obligation of such a surety should not be extended beyond the scope of his undertaking as deduced from the terms, conditions and circumstances of the instrument. The rule is one of construction, and if there is no ambiguity, the plain intention of the parties cannot be disregarded or enlarged by construction. It is essential not merely that performance of the contract shall operate, but that it must be so intended, for the direct benefit of the third person.

It should also be observed in the case at bar that the subcontractor executed two bonds, one known as a "payment" bond which guaranteed payment for labor and materials, and the other known as the "performance" bond which guaranteed the performance of the work contracted for and all of the undertakings, covenants, terms, conditions and agreements of the contract. It is conceded that the "payment" bond is not sufficiently broad in its terms to require payment by the surety of the premiums here sued for. If such an obligation was to have been required of the surety, it could have been more appropriately included in that bond. At any rate, we are

of the opinion that the protection intended to be guaranteed to the public and to the employees of the subcontractor was fully complied with insofar as the interest of these designated beneficiaries was concerned when the subcontractor "carried" the liability insurance in full force and effect during the progress and until the completion of the work; that the insurance agencies, supplying the liability insurance and crediting the subcontractor for the premiums, are what might be termed incidental beneficiaries of the requirement contained in the subcontract and bond for the carrying of such insurance, and that the subcontractor only would be liable for the payment of such premiums. It is unfortunate that the alleged insolvency of the subcontractor leaves the insurance agencies without remedy, but after careful consideration of the authorities and an application of the rule that a third person cannot recover on a contractual obligation not intended for his direct benefit, we are persuaded to the conclusion that the lower court was in error in overruling the demurrer of the surety, Hartford Accident & Indemnity Company, and that the cause should be reversed and a judgment rendered here in behalf of the said appellant.

Reversed, and judgment here for the appellant.

## On Suggestion of Error.

McGehee, J., delivered the opinion of the court on suggestion of error.

In this case, a demurrer had been filed by the appellant, as defendant in the circuit court, to the declaration of the appellees, and was by that court overruled. We held in our former opinion herein that the demurrer should have been sustained. We should have reversed and remanded the case in order that the appellees, as plaintiffs in the circuit court, might make any amendment desired, but we inadvertently reversed the case and rendered judgment here for the appellant, overlooking the fact that the

plaintiffs were entitled to amend their declaration on the sustaining of a demurrer.

In the brief submitted by the appellees in support of their "Suggestion of Error and Motion to Correct and Modify the Judgment," counsel state that they do not suggest that this Court erred in the conclusions arrived at as reflected by the Court's opinion, but contend that the case should have been reversed and remanded so as to afford them an opportunity to amend the declaration in the manner set forth therein. They are entitled to have the cause remanded in order that they may make such amendments to the declaration as they may desire, but in view of the fact that it is not required that the sufficiency of the proposed amendment to state a cause of action be submitted to this Court for consideration, we express no opinion in regard to the sufficiency thereof.

The cause will therefore be reversed and remanded, and the judgment heretofore entered shall be corrected and modified accordingly. It is so ordered.