UNITED STATES of America for the use and benefit of CONTROL SYSTEMS, INC., Plaintiff–Appellee,

v.

ARUNDEL CORPORATION, et al., Defendants–Appellants.

No. 89–4289.

United States Court of Appeals, Fifth Circuit.

March 15, 1990.

Rehearing Denied April 11, 1990.

David C. Mancini, Paul W. Killian, Watt, Tieder, Killian & Hoffar, McLean, Va., for defendants-appellants.

Robert D. Patterson, Patterson & Patterson, Aberdeen, Miss., John C. Sullivan, Sr., Sullivan, Sullivan, Blount & Mooney, Jackson, Miss., S. Allan Alexander, Grady Tollison, Patterson, Tollison & Alexander, Oxford, Miss., for plaintiff-appellee.

Before CLARK, Chief Judge, RUBIN and WILLIAMS, Circuit Judges.

CLARK, Chief Judge:

## I.

This suit involves various claims between the prime contractor, a subcontractor, and one of the subcontractor's materialmen on Lock B of the Tennessee–Tombigbee Waterway Project in Smithville, Mississippi. The suit was originally instituted by the materialman for breach of contract and for payment on the prime contractor's Miller Act bond. *See* 40 U.S.C. §§ 270a to 270d. This is the second appeal which has been taken in this action. The district court in its latest decision dismissed the prime contractor's counterclaims against the materialman for delay damages. We affirm.

## II.

### A. Background.

In 1978, the Arundel Corporation, Guy F. Atkinson Company, and Gordon H. Bell, Inc., d/b/a/ Dillingham Heavy Construction, Inc. as joint venturers (Arundel) contracted with the Army Corps of Engineers (the Corps) to construct Lock B of the Tennessee–Tombigbee Waterway Project in Smithville, Mississippi. Arundel, as prime contractor, subcontracted with Lar Electric, Inc. (Lar) to perform certain electrical, instrumentation, control, and communications work on the project. Lar in turn contracted with Control Systems, Inc. (Control) to supply various control and electrical power systems. The Lar–Control contract incorporated the relevant specifications contained in the prime contract.

On April 25, 1979, the Corps issued Change Order Request No. C–21 to Arundel. The Change Order required extensive modification of the Supervisory Control and Data Acquisition (SCADA) system which Control had contracted to supply to Lar. After conducting negotiations with all of the affected parties, the Corps on November 5, 1980 issued Arundel a Notice to Proceed on C–21, which Arundel subsequently delivered to Lar. Lar did not deliv-

er the notice to Control until May 3, 1981. As a result, Control was delayed in completing its work on the SCADA system, and Arundel incurred increased overhead expenses on the project. The Corps also assessed liquidated damages against Arundel for reasons unrelated to the SCADA system.

In an effort to recoup its losses, Arundel withheld $89,263 due to Lar under the subcontract, claiming Lar was responsible for the delays and the liquidated damages. Lar in turn refused to pay Control $132,747 due under the Lar–Control contract, contending that Control was at fault.

### B. Prior Proceedings.

Control filed an action against Lar for breach of contract and joined Arundel and its sureties on a claim under the Miller Act. The Miller Act allows labor and materialmen to sue on the payment bond required of all prime contractors on federal construction projects. *See* 40 U.S.C. §§ 270a(a)(2), 270b. Lar and Arundel responded with counterclaims against Control and crossclaims against each other. The case was tried to the district court.

The court determined that Lar and Arundel were liable to Control for $132,747, plus costs and interest. The court also awarded Lar the $89,263 due from Arundel under the subcontract and found that neither Control nor Lar was responsible for the liquidated damages assessed against Arundel. The court dismissed the parties' counterclaims against Control, finding that Control had performed within a reasonable time. The court also dismissed Arundel's crossclaims against Lar, reasoning that Arundel was at fault for the delays because it failed to request a time extension from the Corps after receiving Change Order C–21. Lar and Arundel appealed.

On appeal, this court concluded in relevant part that Lar and not Arundel was responsible for requesting a time extension from the Corps and that Lar was liable for Arundel's increased overhead expenses. We also determined that Lar was obligated to indemnify Arundel against Control's Miller Act claim. *United States ex rel. Control Systems, Inc. v. Arundel Corp.*, 814 F.2d 193, 196–97 (5th Cir.1987).

We further determined that Control's time of performance under the Lar–Control contract was fourteen to twenty weeks and not a "reasonable time" as the district court had concluded. Id. at 198. We therefore remanded the parties' counterclaims against Control for its alleged untimely performance of the Lar–Control contract. Id. at 200. On petition for rehearing, we concluded it was unnecessary to remand Lar's counterclaims against Control because those claims were barred by Lar's failure to timely notify Control of the alleged breach of contract. We expressed no opinion as to the legal or factual merits of Arundel's counterclaims against Control. *United States ex rel. Control Systems, Inc. v. Arundel Corp.*, 826 F.2d 298, 299 (5th Cir.1987) (per curiam).

### C. The Present Proceedings.

On remand, the district court dismissed Arundel's counterclaims against Control concluding that Arundel had no right of recovery in either tort or contract. The court reaffirmed Lar's liability to Arundel for its increased overhead expenses and calculated Arundel's damages to be $135,479. The district court disallowed various suggested modifications to this amount, including Arundel's claim to a ten percent profit markup. The parties concede that Lar is insolvent.

Arundel now appeals, asserting two theories to support its counterclaims against Control. Arundel claims to be a third-party beneficiary of the Lar–Control contract entitled to recover for Control's alleged untimely performance. Arundel's alternative contention is that Control is liable to Arundel on a theory of negligence. Arundel also asserts that the district court erred in calculating its delay damages. We affirm the dismissal of Arundel's counterclaims against Control and modify and affirm the district court's determination of Arundel's delay damages.

### III.

### A. Arundel's Third–Party Beneficiary Claim.

█ The Mississippi Supreme Court has established the following analysis for de-

termining whether a non-party to a contract is a third-party beneficiary of the contract entitled to sue for its breach:

> (1) When the terms of the contract are expressly broad enough to include the third party either by name [or] as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Mississippi High School Activities Ass'n v. Farris,* 501 So.2d 393, 396 (Miss.1987) (quoting *Yazoo & M.V.R. Co. v. Sideboard,* 161 Miss. 4, 133 So. 669, 671 (1931)).

Arundel argues that the terms of the Lar–Control contract are expressly broad enough to include Arundel as one of a specified class of intended beneficiaries because the contract incorporates the specifications of the prime contract. Arundel contends the specifications expressly identify a specified class, "Contractor," of which Arundel is the only member. Arundel also claims Lar and Control had Arundel in mind when they agreed that Control would compensate Lar for any liquidated damages assessed against Lar as a result of Control's untimely performance. Arundel claims these facts and the fact it is the prime contractor establish that Arundel was a direct, intended beneficiary of the Lar–Control contract. We disagree.

The mere fact that Arundel was to benefit from the Lar–Control contract and was allegedly injured by Control's purported breach does not give Arundel the right to maintain a contract action against Control. *See Burns v. Washington Savings,* 251 Miss. 789, 171 So.2d 322, 325 (1965); *Hartford Accid. & Indem. v. Hewes,* 190 Miss. 225, 199 So. 93, 95 (1940), *modified,* 190 Miss. 225, 199 So. 772 (1941). Nor is Arundel's status as prime contractor sufficient to make it a third-party beneficiary of the contract:

> In a large construction project each of the individual contracts is inevitably intertwined with many others, all devoted to the general goal of finishing all phases of the project according to the plans and specifications drawn up by the architect and within the time period established under the prime contract. But this interrelationship by itself does not justify imposing third-party beneficiary duties, which flow not from the inevitable consequences of a breach but rather from the intent of the contracting parties.

*E.C. Ernst, Inc. v. Manhattan Const. Co. of Tex.,* 551 F.2d 1026, 1030 (5th Cir.), *modified,* 559 F.2d 268 (5th Cir.1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978).

Arundel's argument that the terms of the Lar–Control contract were expressly broad enough to include Arundel as an intended beneficiary must also fail. While some of the sections of the prime contract which were incorporated into the Lar–Control contract referred to "the Contractor," Arundel, the bestowal of a direct benefit on Arundel was not "evidently within the intent of the terms so used." *Farris,* 501 So.2d at 396. The parties' evident intent in incorporating those portions of the prime contract was to describe the equipment Control was to supply to Lar, not to confer a benefit on Arundel.

Finally, Arundel cannot maintain an action on the Lar–Control contract because Arundel cannot show, as it must, that "the condition which is alleged to have been broken was placed in the contract for [Arundel's] direct benefit." *Hewes,* 199 So. at 95. The condition alleged to have been breached by Control was the time of performance term contained in the Lar–Control contract. This term required Control to deliver its instrumentation and control equipment to the Lock B jobsite within fourteen to twenty weeks after Lar sent Control a written release for manufacture and shipment.

Nothing in the Lar–Control contract indicates that the time of performance term was inserted into the contract "directly or primarily for [Arundel's] benefit." *Hewes,* 199 So. at 95. On the contrary, the terms of the Lar–Control contract indicate that it was

inserted primarily to protect Lar. The contract states:

> If delivery is made more than thirty (30) days after the established delivery period and said late delivery results in a delay in the job and liquidated damages being assessed against LAR Electric Inc. said damages shall be deducted from any amounts owing [to Control] under this purchase order.

The fact that Arundel would benefit from Control's timely performance and that Arundel would be the one to assess liquidated damages against Lar for any late delivery is insufficient to show that the delivery term was inserted primarily for Arundel's benefit. We conclude that Arundel was merely an incidental beneficiary of the Lar–Control contract.

### B. Arundel's Negligence Claim.

■ Arundel's alternative contention is that Control is liable for Arundel's delay damages on a theory of negligence. Arundel asserts that Control, by contracting with Lar, placed itself in such a relation towards Arundel that Control had a duty sounding in tort to act in such a way that Arundel would not be injured. See Magnolia Const. Co. v. Mississippi Gulf So. Eng'rs, 518 So.2d 1194, 1202 (Miss.1988). Arundel maintains Control breached this duty by failing to timely perform the Lar–Control contract and that Arundel's increased overhead expenses were the foreseeable result of that breach. Arundel claims Control is therefore liable in negligence for those expenses. We disagree.

It is unclear under Mississippi law whether a labor and materialman such as Control owes a duty sounding in tort towards a prime contractor such as Arundel. Mississippi case law and the Mississippi code suggest that Control may indeed owe such a duty to Arundel. See MISS.CODE. ANN. § 11–7–20; Magnolia Const. Co., 518 So.2d at 1202; Keyes v. Guy Bailey Homes, Inc., 439 So.2d 670, 673 (Miss. 1983). On the other hand, Arundel cites no Mississippi case on the precise facts before us. See E.C. Ernst, Inc., 551 F.2d at 1026; Mayor & City Coun. of Columbus v. Clark–Deitz & Assoc.–Eng'rs, Inc., 550

F.Supp. 610 (N.D.Miss.1982), appeal denied, 702 F.2d 67 (5th Cir.1983); Owen v. Dodd, 431 F.Supp. 1239 (N.D.Miss.1977).

We need not decide this question because the district court's findings plainly indicate that Control did not engage in any conduct which would have constituted a breach of such a duty. After conducting a bench trial in this case, the district court found that "Change Order C–21 and Lar's failure to give Control prompt written notice to proceed with C–21 caused the delay which is alleged in the counterclaims of Lar and Arundel." The district court also noted that the Corps should have been requested to grant a time extension for Change Order C–21. Our prior holding approved these findings. See Control Systems, 814 F.2d at 196–97. Lar's failures, not Control's performance, were the cause of the delays that increased Arundel's overhead expenses.

The thrust of the district court's findings was unaffected by this court's subsequent ruling that the time of performance specified in the Lar–Control contract was fourteen to twenty weeks, not a "reasonable time" as the district court had concluded. The district court stated that Control would not have been at fault for the delays "[e]ven assuming Control was initially bound by the rigid time schedule set forth in the prime contract between the Corps and Arundel." These findings indicate that Control acted reasonably in performing its duties under the Lar–Control contract, regardless of the time periods initially specified in that contract. We conclude that Control did not breach any duty it may have owed in tort to Arundel.

### C. Arundel's Claim for Profit Damages.

■ Arundel's final contention is that the district court erred in determining its delay damages. The district court calculated Arundel's increased overhead expenses to be $135,479 and entered judgment against Lar for that amount. The court disallowed various suggested modifications to the damage amount, including Arundel's claim for a ten percent profit markup. Arundel argues that profit damages are generally recoverable in breach of contract actions and that ten percent is the reason-

able and customary figure. Assuming Lar's conceded insolvency does not moot the issue, we agree.

Profits are generally recoverable in a breach of contract action when they can be proven with reasonable certainty. *See Lovett v. E.L. Garner, Inc.*, 511 So.2d 1346, 1353 (Miss.1987); *cf. Boh Bros. Const. Co v. M/V Tag–Along*, 569 F.2d 217, 219 (5th Cir.1978). At trial, Arundel detailed the amount of its actual increased overhead expenses and offered uncontradicted testimony that it customarily adds ten percent to its expenses as profit. In the absence of any dispute, this proof is sufficient. We therefore modify the district court's determination of Arundel's delay damages to include a ten percent profit markup.[1]

### IV.

The judgment of the district court as to the amount of Arundel's damages is modified to include a ten percent profit markup and, as modified, is affirmed.

AFFIRMED as MODIFIED.

---

1. We do not believe an award of profits on Arundel's increased overhead expenses is inconsistent with our prior order on remand in this case. That order read, in part, "Arundel is entitled to recover from Lar *those overhead damages* attributable to Lar's delay in delivering the C–21 Notice to Proceed to Control. We RE-MAND to the District Court for findings on the amounts of such damages." (Emphasis added). The order does not limit Arundel's recovery strictly to overhead "expenses," and our prior opinion did not address the issue of profits as an element of Arundel's damages.