LEE, C.J.,
for the Court:
¶ 1. This case concerns a suit brought by Knight’s Marine and Industrial Services Inc. (KM) against Steven Lee, an insurance agent; Fox-Everett, Lee’s employer; and Liberty Mutual Insurance Company (Liberty). KM’s cause of action centered around a workers’ compensation and employers’ liability policy issued by Liberty to Infinity Services of Mississippi LLC (Infinity).[1]
PROCEDURAL HISTORY
¶ 2. Liberty filed a motion for partial summary judgment, which Lee and Fox-Everett joined. Liberty styled the motion as partial because it was not seeking summary judgment on its counterclaim against KM. After a hearing on the motion, the trial court granted summary judgment in favor of Liberty, finding KM was not a third-party beneficiary under the policy between Liberty and Infinity. The trial court ultimately dismissed all claims regarding Liberty. The trial court granted partial summary judgment in favor of Lee and Fox-Everett, finding KM was not a third-party beneficiary and, thus, could not bring a breach-of-contract claim. The trial court allowed KM’s remaining claims against Lee and Fox-Everett to move forward.
¶ 3. KM now appeals, asserting the following issues: (1) the trial court erred in finding KM was not a third-party beneficiary to the contract between Liberty and Infinity; (2) the trial court erred in finding Liberty could not be held vicariously liable *797 for the acts of its agent; (3) the trial court erred in dismissing KM’s claims of negligence and gross negligence against Liberty; and (4) the trial court erred in granting partial summary judgment in favor of Lee and Fox-Everett.
FACTS
¶ 4. In late 2000, Infinity applied for workers’ compensation coverage through the Mississippi Workers’ Compensation Assigned Risk Plan and Pool.[2] The plan administrator appointed Liberty to be the servicing carrier. In late 2001, Liberty provided Infinity with a workers’ compensation policy subject to the Longshore and Harbor Workers’ Compensation Act (LHWCA). The policy stated only employees working in Mississippi were covered. Infinity’s agent was Lee, who worked for Fox-Everett. KM was not a named insured or an additional insured under the terms of the policy between Liberty and Infinity.
¶ 5. KM is a Mississippi corporation engaged in the business of supplying skilled labor to industrial and marine clients both inside and outside Mississippi. In August 2001, KM entered into a contract with Infinity, wherein Infinity would provide laborers and payroll services to KM. David Knight, owner of KM, stated he had met with Lee and Richard Myers, owner of Infinity, to discuss Infinity’s insurance coverage and to ensure Infinity had the proper coverage for laborers it would be providing to KM. Knight asserted he was assured by Lee that Infinity’s workers’ compensation coverage would apply to laborers provided to KM, including those working outside of Mississippi.
¶ 6. In March 2002, Liberty received a policy-change request from Infinity asking Liberty to add a waiver of subrogation in favor of KM. Liberty requested to be provided certain information from Infinity before it could add the waiver to the policy; however, Liberty never received any information and never added the waiver of subrogation to the policy.
¶ 7. Ultimately, several of Infinity’s employees were injured while working outside of Mississippi; some were working at one of KM’s locations outside Mississippi. Liberty did pay some of the claims before determining these particular employees were not covered because they were working outside the state. Infinity subsequently notified KM that it could no longer provide laborers to KM for jobs to be performed outside of Mississippi. KM contended it subsequently sustained economic losses of approximately two million dollars.
STANDARD OF REVIEW
¶ 8. In reviewing a trial court’s grant of summary judgment, this Court employs a de novo standard of review. Anglado v. Leaf River Forest Prods., Inc., 716 So.2d 543, 547 (¶ 13) (Miss.1998). Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). This Court will consider all of the *798 evidence before the trial court in the light most favorable to the nonmoving party. Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995). The party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e).
DISCUSSION
I. THIRD-PARTY BENEFICIARY
¶ 9. KM argues the trial court erred in finding it was not a third-party beneficiary to the insurance contract between Liberty and Infinity. KM concedes it was not a named insured or an additional insured under the terms of the Liberty-Infinity contract. However, KM contends it was afforded direct and substantive rights under the contract; thus, it was a third-party beneficiary.
¶ 10. In Burns v. Washington Savings, 251 Miss. 789, 796, 171 So.2d 322, 325 (1965), the Mississippi Supreme Court stated the following in regard to actions to enforce the breach of a contract or to recover damages stemming from the breach:
In order for the third[-]person beneficiary to have a cause of action, the contracts between the original parties must have been entered into for his benefit, or at least such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third[-]person beneficiary. This obligation must have been a legal duty which connects the beneficiary with the contract. In other words, the right of the third[-]party beneficiary to maintain an action on the contract must spring from the terms of the contract itself.
¶ 11. In Yazoo & M.V.R. Co. v. Sideboard, 161 Miss. 4, 14, 133 So. 669, 671 (1931), the Mississippi Supreme Court developed the following to aid to determine when a particular case comes within the third-person-beneficiary rule:
(1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, (3) if the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.
The supreme court held in 1987 the analysis in Yazoo was still valid. Miss. High Sch. Activities Ass’n v. Farris ex rel. Farris, 501 So.2d 393, 396 (Miss.1987). Furthermore, “[a] mere incidental, collateral, or consequential benefit” is insufficient for the third party to maintain an action. Burns, 251 Miss. at 796, 171 So.2d at 324-25 (citations omitted).
¶ 12. The language of the contract between Liberty and Infinity clearly states the agreement is between those two entities. There is also no language identifying KM either by name or as a member of a specified class of beneficiaries. There is no language reflecting the intent of either party to include KM as a beneficiary.
¶ 13. KM argues the primary reason Infinity and Liberty entered into their contract was to insure Infinity’s workers performing work for KM were insured. However, KM offered no applicable evidence to support this claim. According to the contract between Infinity and Liberty, which was entered into prior to the date of the purported contract between Infinity and *799 KM, Liberty was to supply Infinity with insurance coverage for Infinity’s workers. Neither KM nor any company other than Infinity and Liberty are mentioned in the insurance coverage contract. KM cites to a Liberty claim note and a Liberty audit of premiums to support its claims. However, the Liberty claim note was issued subsequent to the issuance of the policy between Liberty and Infinity. The claim note also states Infinity was Liberty’s client, not KM. The claim note provides no evidence that Liberty and Infinity entered into the contract for KM’s benefit. The audit of premiums references Knights’ Piping as Infinity’s largest client. However, the record includes a confidentiality statement between KM and Infinity that states Knights’ Piping is in no way affiliated with KM. This statement is signed by Myers, Infinity’s owner. Furthermore, this audit was completed in April 2002, well after the subject claims were denied.
¶ 14. KM also contends the terms of the contract between Infinity and KM required Infinity to carry insurance for supplied workers. The documents referenced by KM do not include a signed contract between KM and Infinity. Instead, the documents include a letter from Myers to Knight, KM’s owner, discussing: pricing structure but containing no mention of insurance; a non-compete agreement; a confidentiality statement; new account information; and an unsigned agreement titled “Client Terms and Conditions.” All of these documents were dated well after the Liberty-Infinity contract. Furthermore, none of these documents relate to that contract.
¶ 15. KM offers in support of its argument a certificate of insurance, a waiver of subrogation, and Lee’s applications to obtain coverage. However, the certificate of insurance applies to KM as the proposed insured for another policy. This certificate of insurance was not related to the contract between Liberty and Infinity. These documents contain no reference to Liberty, and Liberty did not prepare them. In March 2002, Liberty received a request from Infinity to add a waiver of subrogation in favor of KM. Liberty sent a letter to Infinity advising that it had received the waiver request but needed certain information before considering whether to add the waiver to the policy. According to the affidavit of a Liberty employee as well as business documents from Liberty, no waiver was ever issued because Infinity never responded with the information requested by Liberty. The applications by Lee were not related to the policy between Infinity and Liberty.
¶ 16. Although KM benefited from the contract between Liberty and Infinity, KM was an incidental beneficiary. The policy was not created to directly benefit KM or other companies Infinity provided with workers. We cannot find from the evidence presented by KM that KM was a third-party beneficiary to the contract between Liberty and Infinity. This issue is without merit.
II. VICARIOUS LIABILITY OF LIBERTY
III. ALLEGATIONS OF NEGLIGENCE
¶ 17. KM argues the trial court erred in finding Liberty could not be held vicariously liable for any claims asserted against Lee and Fox-Everett. KM also asserts the trial court erred in dismissing KM’s claims against Liberty of negligence, gross negligence, tortious interference with business relations, and wrongful interference with its contract against Liberty.
¶ 18. Having found KM was not a third-party beneficiary to the contract, we *800 must find KM does not have standing to bring this claim. We have found KM to be an incidental beneficiary, and “[a] mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or promisee.” See Farris, 501 So.2d at 396 (quoting Hartford Accident & Indem. Co. v. Hewes, 190 Miss. 225, 234, 199 So. 93, 95 (1940)).
IV. SUMMARY JUDGMENT IN FAVOR OF LEE AND FOX-EVERETT
¶ 19. In its final issue on appeal, KM contends the partial summary judgment granted in favor of Lee and Fox-Everett was unclear and, thus, cannot be considered a final judgment.
¶20. The trial court’s order granting partial summary judgment states:
KM is an incidental third[-]party beneficiary of the Liberty Mutual insurance policy issued to Infinity. As such, KM does not have standing to sue Liberty Mutual, Steve Lee or Fox-Everett for their alleged breach of contract and all claims stemming [from] the breach thereof. As such, Defendants Liberty Mutual, Steve Lee, and Fox-Everett’s Motion for Partial Summary Judgment should be, and is hereby, GRANTED.
The language in the trial court’s final judgment and order of partial dismissal reads as follows:
Pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure, the Court expressly determines that there is no just reason for delay in the entry of a Final Judgment and expressly directs the entry of this Final Judgment, dismissing with prejudice the claims of KM against Fox-Everett, Inc. and Steve Lee based upon a third-party beneficiary breach of contract, and all claims stemming therefrom.
¶21. From this language, KM argues: “It cannot be reasonably determined which claims plead[ed] against Lee and Fox-Everett [were] within the scope of the judgment ] and dismissed by the trial court.” We cannot find that the order is unclear. In the next paragraph of the order, the trial court states: “[T]he claims against Fox-Everett, Inc. and Steve Lee based upon a third-party beneficiary breach of contract, and all claims stemming therefrom, should be, and the same are, dismissed with prejudice. All remaining claims of the plaintiff against Fox-Everett, Inc. and Steve Lee remain before the [c]ourt.” KM raised issues in its complaint other than those based on its alleged status as a third-party beneficiary. These claims were left viable by the trial court. This issue is without merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.

. The policy was originally issued to P & L Properties LLC in 2000. Shortly thereafter, P & L became Infinity Services, and the policy was renewed with Infinity in late 2001.

. The Mississippi Workers’ Compensation Assigned Risk Plan was created by the Legislature to provide workers' compensation coverage to employers who are unable to obtain insurance in the "voluntary market.” Miss. Code Ann. § 71-3-111(6). The statute directs the Department of Insurance "to promulgate such rules and regulations as will enable the department to provide the ‘Mississippi Workers’ Compensation Assigned Risk Plan’ for the assignment of risks” which are required to have workers’ compensation insurance but which are unable to obtain it. Miss. Code Ann. § 71-3-111(1) (Rev.2011).