# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-IA-00204-SCT

*TLM INVESTMENTS, LLC*

*v.*

*SHANDA YATES*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/05/2024 |
| TRIAL JUDGE: | HON. KELLY LEE MIMS |
| TRIAL COURT ATTORNEYS: | NICHOLAS J. OWENS, JR. |
| | WILLIAM R. WHEELER, JR. |
| | JAMES R. FRANKS, JR. |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | NICHOLAS J. OWENS, JR. |
| ATTORNEYS FOR APPELLEE: | JAMES R. FRANKS, JR. |
| | ROBERT G. GERMANY |
| | WILLIAM R. WHEELER, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED - 05/08/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., CHAMBERLIN AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     In this interlocutory appeal, we consider whether summary judgment is appropriate for the owner/lessor of the property when a guest is bitten by the tenant's dog. We find that the guest has failed to provide evidence that the owner/lessor had actual or constructive knowledge of the dog or his dangerous propensities and has failed to establish that she was an intended third-party beneficiary under the lease. Therefore, we find that there are no genuine issues of material fact in dispute and that the owner was entitled to judgment as a

matter of law. M.R.C.P. 56(c). We reverse the judgment of the trial court and render summary judgment in favor of the owner/lessor, and we remand the case to the circuit court for any necessary further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. Yurk is Neah Friar's pit bull. Yurk and Friar live on property rented to Friar by TLM Investments, LLC. Shanda Yates is a friend of Friar, and she was bitten by Yurk when she visited Friar. As a result, Yates filed her claim for personal injuries against Friar and the owner of the house, TLM.[1]

¶3. Friar's lease had a no-pet provision. Friar was aware that she was not allowed to have any dogs on the property. Friar disregarded the no-pet provision. Friar even went so far as to conceal Yurk's presence from TLM. Friar admitted that she asked her brother to lie and claim that he was Yurk's owner. Friar also admitted that TLM had no knowledge that Yurk was present at the house. Nevertheless, Yates claims that TLM was negligent to allow Yurk to be on the rental property and that the lease afforded Yates certain protections.

¶4. The trial court denied TLM's motion for summary judgment, and we granted interlocutory appeal.

## DISCUSSION

¶5. In *Karpinsky v. American National Insurance Co.*, 109 So. 3d 84, 88-89 (Miss. 2013) (alterations in original) (footnotes omitted) (citations omitted), this Court explained:

**I.    Standard of Review**

---

[1] The complaint also named as defendants Tom and Linda Muir. The Muirs are the members of TLM. They were eventually dismissed without prejudice.

We review the grant or denial of a motion for summary judgment de novo, viewing the "evidence in the light most favorable to the party against whom the motion has been made."

## II.     The Summary-Judgment Standard

Summary judgment is appropriate and "shall be rendered" if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Importantly, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him."

This Court has explained that "in a summary judgment hearing, [t]he burden of producing evidence in support of, or in opposition to, the motion . . . . is a function of [Mississippi] rules regarding the burden of proof at trial on the issues in question." "The movant bears the burden of *persuading* the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law." "The movant bears the burden of *production* if, at trial, he 'would [bear] the burden of proof on th[e] issue' raised." In other words, "the movant only bears the burden of production where they would bear the burden of proof at trial." Furthermore, "summary judgment 'is appropriate when the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."'"

*I.      Yates offered no evidence that TLM had actual or constructive knowledge of Yurk or his dangerous propensities*.

¶6.     TLM first argues that it did not have knowledge of Yurk until after he bit Yates and received notice of the lawsuit. Next, TLM argues that Friar intentionally concealed Yurk's presence from TLM. Finally, TLM argues that Yates offered no evidence that TLM knew about Yurk's presence or his dangerous propensities. As a result, TLM claims that it is entitled to a summary judgment since there are no genuine issues of a material fact in dispute

3

and that it is entitled to judgment as a matter of law.

¶7. Yates, however, counters that she provided sufficient proof of Yurk's dangerous propensities, and the presence of the no-pet provision in the lease was an admission by TLM that all dogs are dangerous. Yates cites *Olier v. Bailey*, 164 So. 3d 982, 993 (Miss. 2015), to suggest that because Yurk is a pit bull, he generally has dangerous propensities. In *Olier*, this Court held that, "[g]enerally, if the owner [of an animal] knows, or has reason to know, that the animal will be aggressive, or exhibits a dangerous propensity, that owner may be liable in tort." *Id.*

¶8. In a dog-bite case, for the owner of the dog—Friar—to be liable for an attack by her dog, "[t]here [must] be some proof that the animal exhibited some dangerous propensity or disposition prior to the attack complained of, and moreover, it must be shown that the owner knew or reasonably should have foreseen that the animal was likely to attack someone." *Mongeon v. A & V Enters., Inc.*, 733 So. 2d 170, 171 (Miss. 1997) (second alteration in original) (quoting *Poy v. Grayson*, 273 So. 2d 491, 494 (Miss. 1973)). But for the owner/lessor—TLM—to be liable, Yates must prove that TLM "had actual or constructive notice of the dangerous propensities" of Yurk. *Id.* at 171.

¶9. Yates has failed to offer any evidence to establish that there is a genuine issue of a material fact in dispute or that TLM is not entitled to a judgment as a matter of law. M.R.C.P. 56(c). First, the mere presence of a no-pet provision in a lease is not an admission that all dogs have dangerous propensities. The lease provided:

> **PETS.** Pets are not allowed on the Premises. No pets shall be placed upon Premises without prior written permission from Lessor. For each pet approved

4

by Lessor, a pet deposit of [blank] shall be deposited with [blank] and [shall/ shall not] be refundable at termination of Lease. Lessee is liable to Lessor for any damage caused to Premises or Lessor's property by any pet or animal Lessee or Lessee's invitee brings upon the Premises or Lessor's property.

The no-pet provision of the lease does not prohibit dogs out of fear of a dog's dangerous propensities. Rather, the inclusion of the no-pet provision is due to concern that a dog could damage the premises, not injure a person.

¶10. Second, there was evidence that both Friar and Tom Muir testified that TLM did not have any knowledge about Yurk's presence at Friar's home, much less any knowledge about his potential for dangerous propensities. Friar testified as follows:

Q: Let me ask you this. Before the day this happened did Mr. Tom or Ms. Linda have any knowledge that you had the dog there?

A: No, they did not.

Q: Did you ever tell them that you had the dog there?

A: No.

Q: What about as far as their company, any company rep, did any of them know?

A: Billy did come by. Billy came by and the dog was in the back. The dog never barked, so Billy didn't know the dog was there. Another time they had to fix some stuff. I kept the dog outside, and my brother was there, and I told him to tell them if they ask whose dog that was tell them it was his dog.

Q: So let me ask you this. Are you saying that you either kept it secret from them –

A: I did.

Q: – or even almost it sounds like you gave some false information to keep them from knowing?

5

A:      I did. And I can explain why I did that as well.

Here, Friar admitted that she never revealed Yurk's presence to TLM, and she told her brother to tell the TLM representative that Yurk was his dog.

¶11.    Tom Muir also testified that he did not know Friar was keeping Yurk at the property:

Q:      Has Billy or Eddie told you that Ms. Friar has a pit bull in the house?

A:      No.

Q:      Would you be surprised if there's currently a pit bull in the house?

A:      Yes.

Thus, there was not evidence to dispute that TLM did not have knowledge that Yurk was present at the property.

¶12.    Yates claimed that TLM knew about Friar's prior dogs on the property before the attack, so TLM had constructive knowledge of Yurk. Tom admitted that he knew of a prior dog that Friar kept at the property:

Q:      Did Billy at any time tell you that Ms. Friar had a dog on her premises?

A:      Yes.

Q:      What did he tell you?

A:      Said it was a white German Shepherd.

. . . .

Q:      And what did you do?

A:      We discussed it and the dog went away is all I know.

Tom's knowledge of a prior dog at the property does not amount to constructive knowledge

6

of Friar having Yurk at the property.

¶13. "Constructive knowledge is defined as 'information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" ***Mitchell v. Ridgewood E. Apartments, LLC***, 205 So. 3d 1069, 1074 (Miss. 2016) (quoting ***Doe ex rel. Brown v. Pontotoc Cnty. Sch. Dist.***, 957 So. 2d 410, 417 (Miss. Ct. App. 2007)). When Tom discovered that Friar had a German Shepherd on the property, he asked her to remove it. Merely because Friar had been asked to remove one dog from the property does not impute on Tom constructive knowledge that Friar might later bring a dog to the property. Indeed, Friar admitted that she concealed Yurk from TLM, and she asked her brother to lie and tell TLM that Yurk was his dog. TLM cannot be charged with either actual or constructive knowledge of Yurk or his dangerous propensities.

¶14. Because we find no genuine issue of material fact in dispute and that TLM is entitled to judgment as a matter of law, we reverse the judgment of the trial court and render summary judgment in favor of TLM.

    II. *Yates is not an intended third-party beneficiary under the lease.*

¶15. Yates also argues that she was a third-party beneficiary of the lease, particularly under paragraph nine's "any other person" language. Based on this, Yates claimed that "TLM owed her a duty to maintain its premises in a reasonably safe condition for invitees of its tenants" and "to exercise reasonable care for the safety of invitees, including the removal of any dogs." Paragraph 9 of the lease provided:

**DAMAGE TO PREMISES**. Lessor shall not be liable for any damages or injury to Lessee, or any other person, or to any property on the Premises or any part thereof or in common areas thereof, unless such damages or costs are the proximate result of the willful misconduct of Lessor, its agents or employees. Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused, except for injury or damages for which Lessor is legally responsible.

TLM countered this argument on the ground that Yates did not have standing, TLM could waive the no-pet policy at its option, and Yates failed to establish that she was an intended third-party beneficiary.

### A. Standing

¶16.   This Court has held that "privity of contract is necessary to an action founded on a breach of contract, because otherwise a man's responsibility for not carrying out his agreement with another would have no limit." *Delta Constr. Co. of Jackson v. City of Jackson*, 198 So. 2d 592, 597 (Miss. 1967) (citing *Cranford v. W. Union Tel. Co.*, 50 S.E. 585 (N.C. 1905)). Yates was not a party to the lease, and she did not have privity with TLM under the lease. Thus, we find that as a matter of law Yates does not have standing to use the lease as a basis for her claim.

### B. Waiving Contractual Provisions

¶17.   "[A] party to a contract may by words or conduct waive a right to which he would otherwise have been entitled." *Sanderson Farms, Inc. v. Gatlin*, 848 So. 2d 828, 837 (Miss. 2003) (alteration in original) (internal quotation marks omitted) (citing *Scott Addison Constr., Inc. v. Lauderdale Cnty. Sch. Sys.*, 789 So. 2d 771, 775 (Miss. 2001)).

¶18.   There was no factual dispute.  TLM was not aware of Yurk's presence on the

property. Nevertheless, TLM could have waived the no-pet provision. But the provision protected TLM, not third-party guests. It protected TLM from any damage that a pet could potentially cause to the premises. Yates had no basis to use the no-pet provision of the lease as a basis for her claim.

### C.  Third-Party Beneficiary

¶19.    Finally, to determine third-party beneficiary status, we use the following analysis:

> (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Simmons Hous., Inc., v. Shelton ex rel. Shelton*, 36 So. 3d 1283, 1286 (Miss. 2010) (quoting *Yazoo & M.V.R. Co. v. Sideboard*, 161 Miss. 4, 133 So. 669, 671 (1931)). This Court has previously held:

> In order for the third person beneficiary to have a cause of action, the contracts between the original parties must have been entered for his benefit, or at lease such benefit must be the direct result of the performance within contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. The obligation must have been a legal duty which connects the beneficiary with the contract. In other words, the right of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself. 17A C.J.S. Contracts 519(4) (1963).

*Burns v. Wash. Sav.*, 251 Miss. 789, 171 So. 2d 322, 325 (1965). Thus, a mere incidental beneficiary has no right against the contract promisor or promisee. *Hartford Accident & Indem. Co. v. Hewes*, 190 Miss. 225, 199 So. 93, 95 (1940).

¶20.    Here, the inclusion of the phrase "any other person" in the damages provision of the

lease does not make Yates a third-party beneficiary. First, the lease does not mention her expressly. Second, Yates has not shown that she was "evidently within the intent of the terms so used," as required to be considered a third-party beneficiary. *Simmons Hous.*, 36 So. 3d at 1286 (quoting *Sideboard*, 133 So. at 671). Yates maintains that by including the phrase "any other person," TLM owed her a duty. Because Yates has not proved that TLM and Friar contemplated her when signing the lease, she cannot be considered a third-party beneficiary. At best, the inclusion of the phrase could make her an incidental beneficiary. As an incidental beneficiary, Yates has no right to enforce the terms of the lease. *Burns*, 171 So. 2d at 326. Thus, Yates is not a third-party beneficiary of the lease and is not afforded any protections of it.

**CONCLUSION**

¶21.    After de novo review, we find that there was no genuine issue of material fact in dispute and that TLM was entitled to judgment as a matter of law. Thus, we reverse the trial court's denial of summary judgment and render summary judgment in favor of TLM. The case against TLM is dismissed with prejudice. We remand the case to the Prentiss County Circuit Court for any necessary further proceedings.

¶22.    **REVERSED, RENDERED, AND REMANDED.**

      **RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, ISHEE, SULLIVAN AND BRANNING, JJ., CONCUR.**