In an injunctive action by members of the Hattiesburg High School baseball team and their parents, the Mississippi High School Activities Association, Inc. was permanently enjoined in the Chancery Court of Forrest County from placing Hattiesburg High School on one year probation after the Hattiesburg High School baseball team was required to forfeit a ballgame in the 1984 South AA Baseball Tournament.
The Mississippi High School Activities Association, Inc., along with umpires Robert Phillips and Turner Jones perfect this appeal. We reverse.
 I.
On May 15, 1984, Hattiesburg High School played Wingfield High School of Jackson in the South AA Baseball Tournament in Pascagoula, Mississippi. Both high schools were members of the Mississippi High School Activities Association (MHSAA), a non-profit association organized to regulate interscholastic activities of member schools.
In the fifth inning of the game between Hattiesburg and Wingfield, after a 3-3 tie changed to a 10-3 Wingfield lead, Hattiesburg Coach Jim Pierce became involved in a verbal altercation with home plate umpire Robert Phillips. Coach Pierce was ejected from the game and allegedly refused to leave the field. As a result, Umpire Phillips declared the game a forfeit in favor of Wingfield.
Hattiesburg High School continued to play in the tournament, however, and became eligible as the runner-up to advance to the State AA Baseball Tournament in Clinton, Mississippi.
On May 16, 1984, Turner Jones, the third base umpire during the Hattiesburg/Wingfield game, made a telephone report of the incident involving Coach Pierce to Dr. Woodrow L. Marsh, Executive Director of the Mississippi High School Activities Association. The telephone report was followed by a written report from Robert Phillips.
Dr. Marsh's investigation of the incident consisted of talking by telephone to various witnesses. Dr. Marsh spoke with Coach Pierce, but did not talk with any of the Hattiesburg players.
Before deciding on a penalty, Dr. Marsh did not conduct a hearing or allow representatives of Hattiesburg High School to show cause why penalties should not be inflicted. Instead, Dr. Marsh, on May 17, 1984, mailed a "Notice of Penalty" to the *Page 395 
principals of all associated high schools inflicting severe penalties on Hattiesburg High School. According to the "Notice of Penalty," Hattiesburg High School was required to forfeit a baseball game against McComb High School which was played after the Wingfield game. Furthermore, Hattiesburg High School was put on strict probation from May 15, 1984 until April 15, 1985. The penalty would have prevented Hattiesburg High School from competing in the State AA Baseball Tournament in Clinton.
Also on May 17, 1984, the plaintiffs/appellees filed their complaint in the Chancery Court of Forrest County to restrain MHSAA from placing Hattiesburg High School on probation, from removing the Hattiesburg High School Baseball team from the South AA Baseball Tournament, and from other actions detrimental to the plaintiffs. Plaintiffs claimed that without a temporary restraining order they would suffer irreparable injury by not being allowed to display their baseball skills in pursuit of college baseball scholarships. A temporary restraining order granting plaintiffs relief was ordered the same day.
On May 23, 1984, the plaintiffs/appellees filed their amended complaint asking the Chancery Court of Forrest County to permanently enjoin MHSAA from putting Hattiesburg High School on probation and from removing Hattiesburg High School from the South AA Baseball Tournament. The amended complaint also asked for attorneys' fees.
The MHSAA publishes annually a handbook which sets out its constitution, by-laws, and other general information concerning the organization. In Part II, Article III, Section B2 the procedure for inflicting penalties is described as follows:
 No penalty shall be inflicted upon any school by the Director of Activities, or by the Executive Committee, nor shall any appeal be considered by the Executive Committee without notice to the offending school to appear before the Director of Activities or the Executive Committee, as the case may be, and show cause why a penalty should not be inflicted or why the ruling of the Director of Activities should not be affirmed. Any school appearing in response to such notice shall be given a full hearing, and no penalty shall be inflicted, or ruling of the Director of Activities affirmed, except upon substantial evidence that a violation or attempt showing an intent to violate the rules of the association has occurred.
(Emphasis added).
Despite the language of the rules, Dr. Marsh testified the normal procedure was to conduct no hearing unless requested by the accused school.
After hearing the testimony and examining the evidence, the chancellor held:
(1) A contract existed between Hattiesburg High School and the MHSAA and the minor plaintiffs had standing as third party beneficiaries to bring this suit.
(2) Dr. Marsh, in penalizing Hattiesburg High School, did not follow the notice and hearing procedures outlined in the MHSAA handbook.
(3) The minor plaintiffs' serious expectations of college baseball scholarships were legitimate and substantial property interests that should be protected by a court of equity.
(4) The due process of law guaranteed by the United States and Mississippi Constitutions was not afforded to the plaintiffs.
(5) The MHSAA should be permanently enjoined from placing Hattiesburg High School on probation or from removing the Hattiesburg High School baseball team from competition in the State AA Baseball Tournament.
(6) Plaintiffs should be awarded attorneys' fees of $7,000.
 II.
WERE THE MINOR APPELLEES THIRD PARTY BENEFICIARIES TO THE CONTRACT BETWEEN HATTIESBURG HIGH SCHOOL AND MHSAA?
A third person may enforce a promise made for his benefit even though he is a *Page 396 
stranger to the contract or to the consideration. Burns v.Washington Savings, 251 Miss. 789, 171 So.2d 322, 324 (1965). However, the right of a third party beneficiary to maintain an action on the contract must "spring" from the terms of the contract itself. Id. 171 So.2d at 326.
In addition, a third party beneficiary may sue for a breach of the contract "only when the condition which is alleged to have been broken was placed in the contract for his direct benefit. A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or promisee." HartfordAccident Indemnity Co. v. Hewes, 190 Miss. 225, 234,199 So. 93, 95 (1940).
The comments made by this Court in Yazoo M.V.R. Co. v.Sideboard, 161 Miss. 4, 14, 133 So. 669, 671 (1931) are still valid: "The difficulty is to determine when a particular case comes within the rule." To advance its decision, the Court inSideboard developed the following analysis:
 (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.
161 Miss. at 15, 133 So. at 671
The chancellor found a contract was entered between Hattiesburg High School and the MHSAA when Hattiesburg High School accepted membership in the MHSAA. The chancellor also found the terms of the contract were contained in the by-laws and rules of the MHSAA, found in the official MHSAA Handbook. The Court looks to the handbook to see if any rights "spring" to the appellees, or if the alleged broken conditions were placed in the handbook for the direct benefit of the appellees.
Part I, Article III of the MHSAA handbook describes the purpose of the MHSAA as follows:
 The purpose of this organization is to promote the general welfare of the high schools in their relations with each other.
Likewise the notice and hearing provisions in the handbook directly benefit the school, not the individual students. While the students obviously receive some benefit from the notice and hearing provisions, the benefit is more incidental than direct. As appellants point out, it is difficult to imagine a contract entered by a high school that would not ultimately benefit or affect the student body.
For the aforementioned reasons, the Court holds the chancellor erred in finding the plaintiffs/appellees were third party beneficiaries to the contract between Hattiesburg High School and the MHSAA.
 III. WERE THE APPELLEES DENIED ANY PROPERTY INTERESTS?
The bounds of constitutionally protected property rights were advanced by the United States Supreme Court in Board of Regentsv. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972):
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
Id. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.
In order for procedural due process to be invoked, there must be a denial of a right previously recognized and protected by the state. Paul v. Davis, 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405, 420 (1976).
With reference to interscholastic athletics this Court held inNational Collegiate Athletic Assn. v. Gillard, 352 So.2d 1072
(Miss. 1977) that the right to engage in intercollegiate football is not a "property" right as contemplated by the Fourteenth *Page 397 
Amendment to the United States Constitution or by Article 3, Section 14 of the Mississippi Constitution. See also, Mitchellv. Louisiana High School Athletic Association, 430 F.2d 1155
(5th Cir. 1970) (The privilege of participating in interscholastic athletics falls outside the protection of due process).
Notwithstanding the Gillard decision, the chancellor in the present case held that the "serious expectations" of college baseball scholarships created "legitimate and substantial" property interests. That finding is contrary to established case law.
The most notable decision rejecting the rationale employed by the chancellor was Parish v. National Collegiate Athletic Assn,506 F.2d 1028 (5th.Cir. 1975), in which five college basketball players challenged an NCAA grade-point average rule. The Court noted:
 Appellants wisely abandoned at oral argument their attempt to create a property interest out of the alleged injury to their hoped-for careers in professional basketball from the inability to gain tournament experience and television exposure. Both the injury and the career are far too speculative to establish a property interest as defined in Roth.
Id. at 1034, footnote 17.[1]
Another theory advanced by appellees is that their interest in participating in interscholastic athletics should be protected as an integral part of their constitutionally protected interest in receiving a public education. Appellees rely primarily on Gossv. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) which established that a student's legitimate entitlement to a public education is a property interest protected by the due process clause and may not be deprived without the observation of minimum due process procedures. Id. at 574, 95 S.Ct. at 736, 42 L.Ed.2d at 734.
An argument identical to that of the appellees was rejected inWalsh v. Louisiana High School Athletics Assn., 616 F.2d 152, 159 (5th.Cir. 1980) in which the Court held that the due process protection of a student's entitlement to a public education does not extend to all integral parts of the educational process, including participation in interscholastic athletic competition.See also, Dallam v. Cumberland Valley School District,391 F. Supp. 358, 361, (M.D.Pa. 1975).
After reviewing the applicable authorities, this Court holds that the chancellor erred in finding that the appellees were denied any legitimate property interests.
 IV.
DID THE CHANCELLOR ERR IN FINDING THAT DUE PROCESS WAS DENIED THE PLAINTIFFS, THE MEMBERS OF THE HATTIESBURG BASEBALL TEAM, AND HATTIESBURG HIGH SCHOOL?
Hattiesburg High School was not a party to the litigation in the trial court and is not a party to this appeal. Nevertheless, the chancellor explicitly found that Hattiesburg High School was denied due process of law as guaranteed by the United States Constitution and the Mississippi Constitution. The basis of the chancellor's finding was the failure of Dr. Woodrow Marsh, Executor Director of MHSAA, to follow the notice and hearing provisions of Part II, Article III, Section B2 of the MHSAA handbook.
Under this assignment of error we consider whether the appellees may assert the constitutional rights of Hattiesburg High School. The United States Supreme Court *Page 398 
has addressed the issue of jus tertii[2] standing in numerous contexts. See e.g., Secretary of State of Maryland v. J.H.Munson, Co., 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (Professional fundraiser allowed to assert the First Amendment rights of charitable organizations); Craig v. Boren,429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (Vendor of 3.2% beer in Oklahoma allowed to assert the equal protection rights of Oklahoma males 18-20 years of age.). See also, Note, Standing to Assert Constitutional Jus Tertii, 88 Harv.L. Rev. 423 (1974).
Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) involved a group of Missouri-licensed physicians who challenged the federal constitutionality of a Missouri statute excluding non-medically indicated abortions from the purposes for which needy persons may obtain Medicaid benefits.
In Singleton, the Supreme Court implemented standards by which to determine if the plaintiffs were proper proponents of the constitutional rights of their patients. The Court looked primarily to two factual elements: (1) The relationship of the litigants to the persons whose rights were asserted; (2) The ability of the third parties to assert their own rights.
In the instant case, the record is silent regarding whether Hattiesburg High School chose not to pursue its rights and the reasons therefor. There is no indication whatsoever that Hattiesburg High School was faced with any obstacles to prevent it from pursuing its own rights.
Applying the Singleton analysis to the case at bar, the Court holds the appellees were in no position to assert the constitutional due process rights of Hattiesburg High School.
 V.
Having held that the appellees were not third party beneficiaries to the contract between Hattiesburg High School and MHSAA, the appellees had no property interests in playing interscholastic sports, and the appellees were in no position to implement jus tertii standing, the Court concludes that the chancellor erred in granting the injunction against MHSAA.
Therefore, the permanent injunction against the Mississippi High School Activities Association is hereby reversed and dissolved and the award of $7,000 attorneys' fees is vacated.
REVERSED AND RENDERED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., not participating.
[1] See also, Justice v. National Collegiate Athletic Assn.,577 F. Supp. 356, 368 (D.Ariz. 1983) (College football players have no constitutionally protected interest in receiving television exposure to compete for professional football contracts); Blue v. University Interscholastic League,503 F. Supp. 1030, 1035 (N.D. Texas 1980) (High school football players have no property interests in the alleged injury to their hoped-for careers in college football or for football scholarships arising from inability to play in the State football playoffs or to be viewed by college scouts.); Scott v.Kilpatrick, 286 Ala. 129, 237 So.2d 652, 656 (1970) (Speculative possibility of acquiring a college football scholarship furnishes no basis for a property interest.)
[2] The right of a third party.