# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CA-00023-SCT

*DANIEL P. DARE, M.D.*

*v.*

*SHARON S. STOKES AND PAUL H. STOKES*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2009 |
| TRIAL JUDGE: | HON. MARIE WILSON |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | HOLMES S. ADAMS |
| | ELIZABETH FINLAY ARCHER |
| | JOHN SIMEON HOOKS |
| ATTORNEYS FOR APPELLEES: | MICHAEL J. MALOUF |
| | WILLIAM EDWARD BALLARD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 05/26/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Dr. Daniel Dare appeals from an adverse ruling of the Chancery Court of Warren County, Mississippi, denying his intervention in the modification of a property settlement agreement entered into by Paul and Sharon Stokes, which was incorporated into their judgment of divorce. The chancellor found that Dare did not have a legally protected interest in Paul and Sharon's divorce. We agree.

## FACTS

¶2. Paul and Sharon Stokes were married on May 25, 1985. On November 29, 1997, one child was born to the marriage. In October 2007, Sharon began having an affair with Dare. Shortly after the affair began, Paul filed for a divorce based on irreconcilable differences. On April 7, 2008, Paul amended his complaint, adding habitual cruel and inhuman treatment and adultery as grounds for the divorce.

¶3. On July 3, 2008, Paul and Sharon filed their joint motion to withdraw all contested pleadings and proceeded on irreconcilable-differences grounds. The chancellor then entered a final judgment of divorce which incorporated the child-custody and property-settlement agreement ("PSA") "entered into" and "executed by" Paul and Sharon. The PSA specifically stated that it was "by and between" only Paul and Sharon "with respect to settlement of child custody, support, visitation, property rights and other matters." "[F]or and in consideration of the mutual covenants" contained within the PSA, Paul and Sharon agreed, in pertinent part, as follows:

> **COVENANT NOT TO SUE**. Husband hereby covenants and agrees that he will not sue, nor file any lawsuit or any legal action in any Court of this State, or in any Court of any jurisdiction, against Wife, or any other person, regarding any matters relating to the dissolution of their marriage, including any suit for any damages, including, but not limited to, alienation of affection.

¶4. On July 13, 2009, Paul filed a petition for modification of the PSA, seeking to delete the provision that barred him from bringing suit against "any other person" for "alienation of affection." On August 19, 2009, the chancellor held a hearing on Paul's petition for modification, which Sharon did not contest. The chancellor then entered an order modifying the "Covenant Not to Sue" section of the PSA "by deleting the words 'or any other person.'"

¶5. On September 17, 2009, Dare received a letter from Paul's counsel stating that Paul had retained him to pursue an action against Dare for alienation of affection. One month later, Dare filed a motion to intervene pursuant to Mississippi Rule of Civil Procedure 24. At the hearing on December 10, 2009, the chancellor considered arguments from both Paul and Dare, then made a bench ruling denying Dare's motion to intervene. In so ruling, the chancellor noted that Dare was not named in the original complaint for divorce, the amended complaint for divorce, or the PSA itself. The chancellor found that Dare had no legally cognizable interest in Paul and Sharon's divorce.

¶6. Aggrieved by the chancellor's denial of his motion to intervene, Dare appealed.

## ANALYSIS

¶7. The chancery court's denial of a motion for intervention of right is reviewed *de novo*.[1] *See Madison HMA*, 35 So. 3d at 1215. Under Mississippi Rule of Civil Procedure 24, a putative intervenor must:

> (1) . . . make timely application, (2) . . . have an interest in the subject matter of the action, (3) . . . be so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest, and (4) his interest must not already be adequately . . . represented by existing parties.

*Cohen v. Cohen*, 748 So. 2d 91, 93 (Miss. 1999) (citing *Perry County v. Ferguson*, 618 So. 2d 1270, 1271 (Miss. 1993); *Guar. Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 381 (Miss. 1987)).

---

[1]Regarding the denial of a motion for permissive intervention, an abuse-of-discretion standard of review is applied. *See Madison HMA, Inc. v. St. Dominic-Jackson Mem'l Hosp.*, 35 So. 3d 1209, 1215 (Miss. 2010).

¶8.    The underlying "subject matter of the action" is Paul and Sharon's divorce. *Cohen*, 748 So. 2d at 93.  In *Hulett v. Hulett*, 152 Miss. 476, 119 So. 581 (1928), we declared a rule which prohibits intervention by third parties in divorce proceedings, "in the absence of a statute permitting such intervention . . . ." *Id*. at 585.  *See also* N. Shelton Hand, Jr., *Mississippi Divorce, Alimony, and Child Custody* § 7.1, at 169 (5th ed. 1998) ("[D]ivorce actions are for the exclusive use of the parties to the divorce itself.  Third party intervention is not to be allowed.").  In *Hulett*, several men were accused of engaging in adulterous behavior and sought to intervene in the underlying divorce proceeding to file answers denying the allegations.  *See Hulett*, 119 So. at 585.  However, their "purpose for intervention was merely . . . to deny the allegations and basically clear their good names." *Cohen*, 748 So. 2d at 95 (citing *Hulett*, 119 So. at 581).  This was insufficient to allow third-party intervention in the divorce proceeding.  *See Hulett*, 119 So. at 585.

¶9.    In the eighty-two years since this rule was announced, the lone exception to that general rule is found in *Cohen*, a post-Rules decision which involved a "specific set of rare, unusual facts." *Cohen*, 748 So. 2d at 91.  Edward Cohen sought and was granted a divorce from his first wife, then later married his second wife, Carolyn.  *See id*. at 92.  Shortly after the marriage, Edward's first wife filed a motion to set aside the divorce.  *See id*.  As Carolyn was then married to Edward, she was faced with a most unique legal dilemma, not of her own making, and the potential of an outcome which would invalidate her marriage.  Thus, Carolyn filed a motion to intervene, claiming she had an interest in the divorce proceedings. *See id*. at 93.  This Court, recognizing the uniqueness of Carolyn's quandary, granted a "rare exception" to the general rule prohibiting the intervention of third parties in divorce

4

proceedings. *Id*. at 91, 96. Yet even in ***Cohen***, we reiterated that this Court has long held that it is not permissible for a person "not a party to the suit, to intervene in a divorce suit." *Id*. at 93 (quoting ***Hulett***, 119 So. at 585). We emphasized that "there would seldom be factual situations which would warrant intervention by a third party in a divorce proceeding[,]" and that ***Cohen*** "should not be construed to routinely allow third party interventions. ***Hulett*** remains valid law as it relates to most attempts at intervention in divorce proceedings by third parties." *Id*. at 96.

¶10.   Contrary to the dissent's assertions otherwise, the facts presented here do not rise to the level required to overcome the general prohibition to the intervention of third parties in divorce proceedings, as decreed in ***Cohen***. Divorce is between two individuals, a husband and a wife. In ***Cohen***, it was clear that the third party had a real interest in the divorce proceedings. *See id*. If the divorce had been set aside, the second marriage would have been void. But Dare has no analogous legally protected interest in the present divorce proceedings. As the chancellor found, the PSA was a contract between, and for the benefit of, Paul and Sharon. Dare was not named in the PSA,[2] and it provides for no legal obligations or duties owed expressly to Dare. As such, intervention is inappropriate. The circumstances that will warrant an exception to the general rule that third parties cannot intervene in divorce proceedings must be limited to the most unique circumstances. The chancellor's denial of Dare's motion to intervene comports with this principle. Moreover, given Dare's attempt to intermeddle in the divorce proceedings, after having meddled with

---

[2]This fact renders the dissent's argument on "[i]f the clause had in fact named [Dare] as a potential defendant," inapposite. (Diss. Op. at ¶ 16).

the marital relationship of Paul and Sharon Stokes, justice hardly "demands intervention" by Dare. *Id*. (in *Cohen*, this Court held that "justice demands intervention by Carolyn."). We reiterate that *Cohen* "should not be construed to routinely allow third-party interventions. *Hulett* remains valid law as it relates to most attempts at intervention in divorce proceedings by third parties." *Id*.

## CONCLUSION

¶11. The Chancery Court of Warren County's denial of Dare's motion to intervene is thus affirmed.

¶12. **AFFIRMED**.

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, CHANDLER, PIERCE AND KING, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**KITCHENS, JUSTICE, DISSENTING:**

¶13. I must respectfully dissent. While I agree with the majority that *Cohen v. Cohen*, 748 So. 2d 91 (Miss. 1999), controls, I would find that intervention is appropriate. Dr. Dare has a legally cognizable interest that was not adequately protected by the parties to the modification of the divorce decree, and he should therefore be allowed to intervene.

¶14. As the majority rightly reports, this Court, in *Cohen*, 748 So. 2d 91, examined the doctrine regarding third-party intervention in divorce proceedings. While it approved of the general application of the holding in *Hulett v. Hulett*, 152 Miss. 476, 119 So. 581, 585 (1928), i.e., that third-party intervention is prohibited in divorce proceedings, *Cohen* disapproved a formalistic or mechanical approach that would unnecessarily bar intervention in every instance. "The general rule prohibits intervention by third parties in divorce cases[,]

6

*Hulett v. Hulett*, 152 Miss. 476, 119 So. 581 (1928)[;] however, rare exceptions which are distinguished do exist." *Cohen*, 748 So. 2d at 92. Thus, *Cohen* clearly allows, indeed requires, intervention in divorce cases in those rare instances in which a third party can demonstrate "an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." *Id.* at 93 (quoting M.R.C.P. 24(a)(2)).

¶15. Most divorce cases do not seriously implicate the interests of strangers to the marriage. There is, however, no ontological distinction that separates a domestic dispute from other equitable matters before a trial court. The fact that marriage is a compact between two persons and the fact that divorce dissolves that compact do not foreclose the possibility that the activities of the parties to the compact, or other circumstances, may drag significant interests of other persons into the dispute. Where the facts of the case show that the third party can meet the four-part test outlined by *Cohen*, the court should allow intervention.

¶16. There is nothing routine about the posture of this case. A cursory examination of the facts clearly shows that Dr. Dare's motion met the requirements for intervention as of right under Rule 24 of the Mississippi Rules of Civil Procedure. He plainly has an interest in the subject matter; the relevant clause of the property settlement contemplates a class of potential defendants of which he is a member. Indeed, the abstract language of the clause notwithstanding, the class of potential defendants reasonably could be construed as a class of one, namely, Dr. Dare. If the clause had in fact named Dr. Dare as a potential defendant, the question of whether he should be allowed to intervene instantly would be answered in the

7

affirmative. But there is no requirement that a third-party beneficiary to a contract be named in the document, and it is well settled that "[a] third person may enforce a promise made for his benefit even though he is a stranger to the contract or to the consideration." *Miss. High School Activities Ass'n, Inc. v. Farris By and Through Farris*, 501 So. 2d 393, 395-96 (Miss. 1987) (citing *Burns v. Washington Savings*, 251 Miss. 789, 171 So. 2d 322, 324 (1965)). Unlike the intervenors in *Hulett*, 119 So. at 585, whose only interest was the protection of their reputations in their community, this clause, as originally incorporated, relieved Dr. Dare of considerable potential liability for both actual and punitive damages under an alienation of affection claim. The disposition of Paul Stokes's motion to strike that clause, once granted, impeded Dr. Dare's very real interest in not being sued and not merely his intangible reputation. And it is obvious that neither Paul nor Sharon Stokes acted to protect that interest for Dr. Dare. The majority implicitly recognizes Dr. Dare's obvious interest in this decree in its disapproval of his "attempt to intermeddle in the divorce proceedings, after having meddled with the marital relationship." Maj. Op. at ¶ 10.

¶17. As Dr. Dare clearly has an interest in the subject matter that is not protected by the parties, and as the disposition will impede his ability to protect his interest in not being sued, I would reverse the judgment of the trial court and remand for further proceedings consistent with the foregoing analysis.